OLYMPIA HARBOR LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64272.    Promulgated March 20, 1934.

*Thomas N. Fowler, Esq.*, and *Robert T. Knight, C.P.A.*, for the petitioner.

*Willis R. Lansford, Esq.*, for the respondent.

OPINION.

ARUNDELL: The evidence establishes to our satisfaction that of the sum of $7,900 paid to the Rockway Mill Wood Co. at least $5,400 was in fact paid to get rid of an unsatisfactory contract and not more than $2,500 was paid for the assets taken over. Even assuming that petitioner was warranted in abrogating the contract because of the breach by the Rockway Mill Wood Co., it is not to be denied the loss it actually suffered because it sought the more amicable course and thus avoided almost certain litigation. The fact

that petitioner may have hastened matters because of a proposed plan of various mill owners to join in an operation for the handling of their waste material does not change or affect the transaction between petitioner and the Rockway Mill Wood Co. On this issue the respondent is reversed.

The evidence does not convince us that the advances made to the Tumwater Lumber Mill Co. should be allowed as a bad debt deduction in 1929. Undoubtedly a large portion of the sum was not advanced until that year and the entire sum was loaned for frankly experimental purposes and could be repaid only through income from the operations of the Tumwater Co. At the end of 1929 it was in regular operation, although it had experienced the pinch of the depression, as had business generally. Its balance sheet showed it entirely solvent. It is true that its liquid assets were limited, but that was known when the advances were made by petitioner and was the occasion for its action. By placing a liquidating value on its assets, including the new gang-saw mill which had recently been completed, a value was reached of $142,523.30, and as the outstanding liabilities, including the sum due petitioner and various mortgages on the property, equaled $186,894.92, claim is made that the Tumwater Co. was insolvent and that petitioner was warranted in making the charge-off that it did. Petitioner's president testified that in the light of subsequent events the entire account should have been charged off, but the testimony goes no further than this, and no facts are given to support the general statement.

In deducting 40 percent of the indebtedness due by the Tumwater Lumber Mill Co. petitioner evidently did not consider it was dealing at arm's length with that company, for, even on its own calculation of the assets and liabilities of the Tumwater Co., it would have recovered more than 60 percent of the amount due. Petitioner's answer is that the Anderson brothers did not intend that the outside creditors of the Tumwater Co. should lose anything. However commendable such a course may be, it does not follow that petitioner may at one and the same time treat itself as a true creditor and also as ready to relinquish its right to payment and by so doing charge off the item as a bad debt against its income. Except for the close relationship that existed between the two corporations, it is not likely that the Tumwater Co. would have borrowed such a large sum as it did from petitioner, which sum was payable on demand. The two corporations had in earlier years been in the habit of filing consolidated returns, but that was not permitted under the revenue act in force in 1929. If it had been the accounts could not have reflected under any guise the sum now sought to be deducted. The evidence is far from satisfactory that there was a charge-off within

the year 1929, but, passing that matter over unanswered, we are of the opinion that the debt due to the petitioner by the Tumwater Lumber Mill Co. was not ascertained to be worthless to the amount of $33,594.65 and that the charge-off should not be allowed as a deduction from petitioner's 1929 income.

*Decision will be entered under Rule 50.*